**MITSLER et al. v. EYE et al.**

No. 15361—Opinion Filed Dec. 9, 1924.

Rehearing Denied Jan. 6, 1925.

(Syllabus.)

1. **Schools and School Districts—Consolidated District—Disposition of Assets of Disorganized District.**

Where a consolidated school district is organized under the provisions of chapter 86, article 11, Comp. Stat. 1921, the assets of the disorganized district shall be applied to the payment of the floating indebtedness of the district, if any, then to the bonded indebtedness, any residue to become the property of the consolidated district.

2. **Same—Validity of Bond Issue—Effect of Debt Limit of Component Districts.**

Where several districts are consolidated under the above provisions and the consolidated district attempts to issue its bonds as provided by law, such issue will be invalid if the aggregate of the bonded indebtedness of any district, added to the new proposed indebtedness, will exceed the constitutional limit of 5 per cent. of the taxable property as provided by section 26, article 10, of the Constitution.

3. **Same—Assets of Disorganized District to be Considered.**

When it appears that any such district disorganized upon the forming of a consolidated district has available assets sufficient to liquidate the original bonded indebtedness, such fact may be considered in determining the validity of the subsequent issue.

4. **Same—When Bonded Indebtedness "Incurred."**

Bonded indebtedness is incurred within the meaning of section 26, article 10, of the Constitution, when the bonds of the school district are voted, issued, approved and delivered, and not when the election is held at which they are submitted.

5. **Same—Assent of "Three-Fifths of Voters."**

That part of section 26, article 10, of the Constitution of Oklahoma which requires the assent of three-fifths of the voters of the subdivision of the state where the question is submitted refers to three-fifths of the electors participating in the election, and not three-fifths of the entire electorate.

Error from District Court, Craig County; A. C. Brewster, Judge.

Action by Martin Mitsler and others against Ulrey C. Eye and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

Kornegay & Probasco, for plaintiffs in error.

Carey Caldwell, for defendants in error.

WARREN, J. This is a second appeal from the district court of Craig county. It is an injunction suit seeking to prevent the issuance and sale of $25,000 bonds of consolidated school district No. 2 of Craig county, containing three school districts of Craig county and a part of a district in Nowata county.

On the first trial in the district court, an injunction was sought for alleged irregularities in the election forming such consolidated district, because of an alleged excessive indebtedness created by the proposed $25,000 bond issue, and the selection of an illegal site. The injunction was denied.

On the prior hearing in this court the judgment of the trial court was reversed. Cheek v. Eye, 96 Okla. 44, 219 Pac. 883.

The ground for reversal was that in school district No. 27, one of the districts included in the consolidation, there was a prior bonded indebtedness, less sinking fund, of $2,500, which was approximately nine-tenths of one per cent. of the taxable value of the property, and that the proposed new indebtedness was four and two-tenths per cent. of such valuation, creating an excess of one-tenth of one per cent. over the constitutional limit of 5 per cent. for school purposes as fixed by section 26, article 10, of the Constitution of Oklahoma.

The cause was reversed for a new trial for the reason that it was shown by the record that assets of school district No. 27 were still on hand, but such .record did not disclose the value thereof and whether or not, if disposed of and applied to the existing indebtedness, as provided by section 10469, Comp. Stat. 1921, such indebtedness would be so reduced as to bring the net amount within the constitutional limitation. The court did not decide whether or not this could be done because the question was not briefed.

The cause was retried in the district court of Craig county, and was tried by the court on the theory that the only question left open was the aforesaid question fixing the amount of the valuation of consolidated district and indebtedness of school district No. 27, including a valuation of assets on hand available for the purpose of retiring the existing bonds.

The trial court found as follows: ·

"The court finds that the value of the property owned by school district No. 27, may be taken into consideration in estimating the financial condition of school district No. 27 at the time of the vote of the people to consolidate the several school districts into one consolidated district, and whether or not, considering the bonded indebtedness attempted to be voted, it is above the five per cent. allowed by the Constitution; and the court finds from the evidence in this case that the taxable value of the districts 27, 45, 58, and 72 for 1921 was $589,145; that the taxable value for the same districts for 1922 was $561,340; that the taxable value of said districts for 1923 was $541,320. The court finds from the evidence that the school building belonging to district No. 27 was of the value of $6,000; that .the seats were of the value of $400; that the two vacant lots were of the value of $100; that the four lots upon which the school building was erected, and upon which the building is now being prepared or being built, was $200; and that the other personal properties belonging to school district No. 27 are of the value of $1,000, making a total value of the property of the school district No. 27, which it had on hand as shown by the above items, $7,700.

"The court finds that the indebtedness of said school district No. 27, at the time of the voting of the bonds, on July 1, 1921, was the sum of $3,000, and that the total value of the property belonging to said school district was greater than the indebtedness of the said district No. 27 at that time.

"The court finds that, taking the assessable value of the property as shown in 1921, the $25,000 voted would make something like 4.3% plus. Taking the taxable value of the property in 1922, it would make 4.4% plus; and for 1923 it would make 4.6% plus; and the court finds that, whether we consider it for 1921, 1922, or 1923, the total per centum of taxes raised for the total assessable or taxable value of all the property, as shown by the return of assessment extended on the tax books, was less than 5 per centum, and it was within the constitutional limit.

"The court finds that on May 12, 1922, there was in the sinking .fund of school district No. 27, for the purpose of meeting outstanding bonds, the sum of $554.47, and that on June 1, 1922, there was in that sinking fund the same amount of $554.47, and the sum of $585.70 on June 30th."

Section 26, article 10, of the Constitution of Oklahoma, in part, is as follows:

"Limitation Upon Debts of City, County, etc. —Vote by People—Sinking Fund. No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness."

The election at which these bonds were voted is attacked for the reason that three-fifths of all the voters residing in the district did not assent to the indebtedness. While it does not affirmatively appear from the record that there was not such an assent, it is only necessary under our construction of the language of the provision that three-fifths of the voters participating in the election register their approval. Faulk v. Bd. of Co. Com'rs, 40 Okla. 705, 140 Pac. 777.

This question, and no other was squarely before the court in Mason et al. v. School District No. 72, Blaine County, 66 Okla. 239, 168 Pac. 798, and this court said:

"Under section 26 of article 10 of the Constitution of this state, a majority of three-fifths of the legal voters at an election therefor, and not three-fifths of the legal electors residing in a school district, authorizes the issue of school bonds in excess of the income and revenue of such school district in any one year." See, also, Rasure, Supt., v. Sparks, 75 Okla. 181, 183 Pac. 495.

This has been so often decided by this court and by decisions covering such a long period of time that it is no longer open for discussion.

It is next necessary to decide what assessment governs in determining whether or not the constitutional limit has been exceeded. It is contended on behalf of the plaintiffs in error that the assent of the voters is required in the year in which the bonds are issued. The fallacy of this argument is apparent. It would only be necessary in that case to defeat an issue to involve the district in litigation, carry it beyond the year, and thus defeat the law, and the will of the voters, even though the litigation might prove unsuccessful in the end. In the present case the efforts of the able and energetic attorneys for the plaintiffs in error have prolonged this litigation for nearly three years, and were the other rule to apply, though they lost on the questions really at issue, they would attain their desired result by their perseverance.

In determining the assessment which governs the calculation it is only necessary to read the latter part of the constitutional provision. It provides the valuation shall be "ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness."

When is the indebtedness incurred? Obviously when the obligations by which the district is bound are issued and value received for them. There is no indebtedness until the money is received by the district. The money is not received until the bonds are issued, approved as required by law, and delivered to the purchasers.

"Where a vote is required, the validity of bonds issued pursuant to such vote is to be determined by the last assessment of the property before the bonds are issued, not the last assessment before they are voted or directed to be issued." Dillon on Municipal Corporations (5th Ed.) vol. 1, page 403.

This holding is sustained by the vast weight of authority. Gray on Limitations of Taxing Power, section 2162; McQuillon on Municipal Corporations, vol. 5, sec. 2232; 28 Cyc. 1584; Frost et al. v. Central City (Ky.) 120 S. W. 367; City of Austin v. Valle (Tex.) 71 S. W. 414; Goodson v. Dean (Ala.) 55 South. 1010; State ex rel. Galles v. Bd. of Com. (Mont.) 185 Pac. 456; Seymour v. City of Tacoma (Wash.) 33 Pac. 1059; Culbertson v. City of Fulton (Ill.) 18 N. E. 781; Redding v. Esplin Borough (Pa.) 56 Atl. 431; Janes v. City of Racine (Wis.) 143 N. W. 707; State v. City of Tomahawk (Wis.) 71 N. W. 86; State ex rel.

Morse v. Cornwell (S. C.) 18 S. E. 184; Gibson v. Knapp, 47 N. Y. Supp. 446; Thompson Houston Co. v. City of Newton, 42 Fed. 723; Dudley v. Bd. of Com. (Colo.) 80 Fed. 672; Bd. of Education v. Natl. Life Ins. Co. (S. D.) 94 Fed. 324; Corning v. Bd. of Com. (Kan.) 102 Fed. 57.

The trial court found that the assessment of the consolidated district for 1923 was $541,320, and that the bonds were 4.6% thereof. The court further finds that the existing indebtedness of former school district No. 27, the only one in question, was $3,000 less $554.47 in the sinking fund, leaving a net indebtedness of $2,445.53. The court further found that the assets of the old district required by law to be applied to the payment of this debt were $7,700. This being an injunction suit, we can assume that this property can be sold prior to the issuance of the bonds, and the entire district be free from debt before their issuance. It is affirmatively shown from the record that consolidated district No. 2 has enough cash on hand to take up the bonds. Inasmuch as any overplus must go to the new consolidated district under the law, it can become a purchaser of this property for such an amount as it sees fit, not less than the bonded and floating indebtedness of the old district.

The question of the location of the new schoolhouse, strictly speaking, is not in this case, but inasmuch as it has been presented so vigorously and may cause further litigation in this case, we will notice it by saying that it does not apply to consolidated districts. It appears in the part of the statute applying to ordinary districts, and the Legislature, no doubt, felt that the transportation facilities provided for consolidated districts rendered such a provision unnecessary there.

An attempt is made in briefs filed by friends of the court to persuade us to recede from the position taken in the former opinion wherein it is held that the existing indebtedness of the old district must be added to the proposed new debt, and that their sum must not exceed the maximum 5% limit. Reflection only convinces us of the wisdom of the former position. Were this changed, it would enable districts by successive changes in their boundaries to so pyramid their indebtedness that property could be virtually confiscated. Districts could be consolidated, each having a 5% bonded debt, 5% additional could be added after consolidation and spent on a new building. The district could then be dissolved in accordance with section 10480, new consolidated districts formed with other

districts, and the process repeated. The constitutional provision under this theory becomes a nullity.

The objection to testimony is apparently not seriously relied on by plaintiffs in error, as there is no attempt to comply with rule 27 (87 Okla. xxiii). From such information as we can secure from the incidental reference thereto, the testimony was inadmissible.

The form of ballot is complained of in this case by the plaintiffs in error. The form has been examined, and is in compliance with the statute. The case of Mayberry v. Gaddis, 88 Okla. 286, 213 Pac. 316, is cited by plaintiff in error, but this case, instead of being an authority in support of his theory, is against it. The form of ballot in this case is quite as fully in compliance with the statute as those in Mayberry v. Gaddis.

For the reasons herein set out, the judgment of the district court of Craig county is affirmed.

McNEILL, C. J., and NICHOLSON, BRANSON, LYDICK, MASON, and GORDON, JJ., concur.

Note.—See under (1) 35 Cyc. p. 852; (2) 35 Cyc. p. 989; (3) 35 Cyc. p. 990 (1926 Anno.); (4) 35 Cyc. p. 990 (1926 Anno); 28 Cyc. p. 1584; (5) 28 Cyc. p. 990.