**COPPEDGE et al. v. DEPEW TOWNSHIP, CREEK COUNTY, et al.**

No. 14955—Opinion Filed Jan. 6, 1925.

**Townships—Bonded Indebtedness—When "Incurred."**

Bonded indebtedness is incurred within the meaning of section 26, article 10, of the Constitution, when the bonds of the township are voted, issued, approved and delivered, and not when the election is held at which they are submitted. Mitsler et al. v. Eye et al., 107 Okla. 289, 231 Pac. 1045.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from Superior Court, Creek County; C. B. Rockwood, Special Judge.

Action by O. S. Coppedge et al. against Depew Township et al. From a judgment in favor of the defendants. plaintiffs bring error. Affirmed.

Johnson & Miller, for plaintiffs in error.

L. O. Lytle and R. K. Robertson, for defendants in error.

Opinion by PINKHAM, C. The plaintiffs in error, as plaintiffs, commenced this action in the superior court of Creek county, Okla., against the defendants in error to cancel $65,000 road and bridge bonds theretofore voted by the electors of Depew township, Creek county, and issued by the board of directors of said township, and praying for an injunction restraining Depew township and its officers from selling or making disposition of said bonds.

A temporary injunction was by the court granted and upon final hearing the court sustained a demurrer to the evidence of the plaintiffs, dissolved the temporary injunction, and dismissed the plaintiffs' cause of action.

Motion for a new trial was overruled and exception made and allowed.

From the judgment of the court this appeal is prosecuted.

The one question for determination is, When is an indebtedness incurred by a municipality? and upon what assessment is the provision which provides in part that "no * * * township * * * shall be allowed to become indebted * * * to an amount exceeding in any year the income and revenue provided for such year without the assent of three-fifths of the voters thereof voting at an election to be held for that purpose, nor * * * shall any indebtedness be allowed to be incurred to an amount including existing indebtedness in the aggregate exceeding five per centum of the valuation of the taxable property therein to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness?" (Sec. 26, art. 10, Constitution.) These provisions of the Constitution are prohibitory, self-enforcing, and are to be strictly observed.

It is contended by plaintiffs in error in their brief that the entire amount of the bond issue is void for the reason that the total amount of the bonds voted, including existing indebtedness was in excess of the constitutional debt limit of the municipal township.

The following are the facts disclosed by the record:

On April 3, 1923, the board of directors of Depew township adopted and approved a resolution calling and ordering a special election to be had therein on the 10th day of May, 1923, for the purpose of submitting to the qualified voters thereof the question of issuing bonds of said township in the sum of $65,000, to be used for the purpose of improving the roads and highways within said township and providing for a levy and collection of an annual tax sufficient to pay interest and principal on said bonds, and further provided that said bonds be dated as of July 1, 1923, and to be designated as road and bridge bonds of 1923, and to bear interest at the rate of 6 per cent. per annum and to become due and payable within 25 years from date.

At the same meeting the township officers entered into a contract with a bond buyer for the sale and purchase of said bonds in the event the voters authorized the issue.

Notices were posted calling the election for May 10, 1923, and the same was held on said date and the proposition carried by the required number of votes, as certified by the election officials.

On May 17, 1923, the bonds, dated July 1, 1923, were duly prepared and presented to the township board of directors, and were duly signed by the president of the board and attested by the clerk, and among

other things provided "That the total indebtedness of said township does not exceed any constitutional or statutory limitation."

On May 19, 1923, the bonds were presented to the proper county officers for their signatures and certificates. The county clerk refused to sign and certify the bonds for the reason that the amount thereof, including existing indebtedness, exceeded the debt limit imposed upon the township by the Constitution and laws of the state, as appears of record in the office of the county clerk.

After the refusal of the county clerk to sign and certify to said bonds for the reason stated and on the same day, May 19, 1923, the county assessor prepared and filed with the county clerk his certificate in which he certified that the assessed valuation for state and county purposes of Depew township for the year 1923, as appears of record in his office on that date, May 19, 1923, was the sum of $1,853,506.

It appears that prior to the filing of this certificate by the assessor the assessed valuation of the property in Depew township for state and county purposes as appeared of record in the office of the county clerk was the sum of $1,306,260.

The bonded indebtedness of Depew township as of May 10, 1923, the date of the election, and of May 17, 1923, the date the bonds were by the township board signed, certified, and delivered to the bond buyer, and of May 19, 1923, the date the assessor increased the valuation, and of July 1, 1923 the date the bonds were dated, as appears of record in the office of the county clerk, was the sum of $18,000.

It is not disputed that this bond issue of $65,000 exceeded the constitutional debt limit more than $17,000 on the date the voters authorized the indebtedness (May 10, 1923) and that the last assessment prior to the date of the election was not sufficient to authorize the issuance of the bonds in question.

The record discloses that the assessor used the public service corporation's valuation of said township as certified to him by the state board of equalization for the year 1922, and his incompleted ad valorem assessment for the year 1923, added the two together, and certified the amount above referred to as being the last assessment as appeared of record in his office for state and county purposes for the year 1923.

After the assessor filed with the county clerk his certificate of May 19, 1923, which

increased the assessed valuation of the township sufficient to bring the amount of the bond issue within the constitutional debt limit the clerk signed and certified to said bonds.

The record further discloses, however, that the county assessor, on the 31st day of August, 1923, certified the complete tax list as it appeared in his office as passed upon by the state and county boards of equalization, and that the total valuation of the township of Depew, including the town of Depew, was $1,930,604.

The question of when an indebtedness is incurred within the intent and meaning of the constitutional provision of section 26, art. 10, of the Constitution, has been definitely decided in the recent case of Mitsler et al. v. Eye et al., 107 Okla. 289, 231 Pac. 1045, in which case it is said in the body of the opinion:

"When is the indebtedness incurred? Obviously when the obligations by which the district is bound are issued and the value received for them. There is no indebtedness until the money is received by the district. The money is not received until the bonds are issued, approved as required by law, and delivered to the purchaser."

The court quotes with approval Dillon on Municipal Corporations (5th Ed.) vol. 1, 403, as follows:

"Where a vote is required the validity of the bonds issued pursuant to such vote is to be determined by the last assessment of property before the bonds are issued, not the last assessment before they are voted or directed to be issued."

In other words, the computation should be made previous to the incurring of the indebtedness; that is to say, when the bonds are sold and delivered and the municipality paid for the same, and whether or not the bonds are in excess of 5 per cent. of the valuation effective at the time of the election, if such bonds are within 5 per cent. of the valuation effective at the time of their sale for value, the bonds would be valid.

The fact that the bonds were dated July 1, 1923, indicates that it was intended to issue the bonds under the valuation of the fiscal year beginning July 1, 1923; that is, when the same became effective. This valuation became effective August 1, 1923, and under it the bonds are within the five per cent. limitation.

Judge McQuillin, at sec. 2232, vol. 5, of McQuillin on Municipal Corporations, states the rule approved in the Mitsler Case, supra, which is as follows:

"In so far as bonds are concerned, a vote in favor of their issuance does not create indebtedness, but the debt is not incurred until their issuance and sale. It follows that an election as to incurring indebtedness by the issuance of bonds is not invalid, merely because at the time of the election the debt limit is exceeded, where the debt limit is not exceeded at the time of the issuance and sale of the bonds."

Following the decision in Mitsler v. Eye, supra, we think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.