Dear Representative Davis,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. May voters in a school district vote to authorizeindebtedness in excess of the constitutional limits which may beincurred so long as the bonds are issued in incremental amountsthat comply with law, and the constitutional limit is notexceeded?
 2. May general revenue funds of a school district be used topay interest on bonded indebtedness of the district under anycircumstances?
 I.
¶ 1 Your first question is controlled by Article X, § 26 (a) of the Constitution of Oklahoma which states in pertinent part:
 (a) Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor, in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five percent (5%) of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness: Provided, that if a school district has an absolute need therefor, such district may, with the assent of three-fifths of the voters thereof voting at an election to be held for that purpose, incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding five percent (5%) but not exceeding ten percent (10%) of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness, for the purpose of acquiring or improving school sites, constructing, repairing, remodeling or equipping buildings, or acquiring school furniture, fixtures or equipment; and such assent to such indebtedness shall be deemed to be a sufficient showing of such absolute need, unless otherwise provided by law. Provided further, that if a city or town has an absolute need therefor, such city or town may, with the assent of three-fifths of the voters thereof voting at an election to be held for that purpose, incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding five percent (5%) but not exceeding ten percent (10%) of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness, and such assent to such indebtedness shall be deemed to be a sufficient showing of such absolute need unless otherwise provided by law.
Id. (emphasis added).
¶ 2 With the assent of three-fifths of the voters of a public school district, the district may incur indebtedness in an amount not to exceed ten per cent (10%) of the valuation of the taxable property of the district, including existing indebtedness.
¶ 3 Your first question is whether it is possible for the voters of a school district to vote to authorize indebtedness in an amount which exceeds the constitutional limits of bonded indebtedness, and subsequently issue bonds in separate amounts such that each issuance is in compliance with limits allowed by law. The constitutional prohibition found at Article X, § 26(a) limits indebtedness to ten per cent (10%) of property valuation. The limitation is stated in terms of incurring indebtedness without specifically limiting the amount of debt, which the voters may approve.
¶ 4 The concept of when indebtedness occurs has been reviewed on a number of occasions by the Oklahoma Supreme Court. InSublett v. City of Tulsa, 405 P.2d 185 (Okla. 1965), the Court reviewed an ordinance of the city of Tulsa regarding bonded indebtedness, and stated:
 Bonded indebtedness is incurred, within the meaning of section 26, article 10, of the Constitution, when the bonds of the township are voted, issued, approved, and delivered, and not when the election is held at which they are submitted.
Id. at 199 (emphasis added) (quoting Coppedge v. DepewTownship, 234 P. 769 (Okla. 1925)).
¶ 5 The following quote appears at page 770 of Coppedge:
 The question of when an indebtedness is incurred, within the intent and meaning of the constitutional provision of section 26, art. 10, of the Constitution has been definitely decided in the recent case of Mistler et al. v. Eye et al. (Okl.Sup.) 231 P. 1045, . . . in which case it is said in the body of the opinion:
 "When is the indebtedness incurred? Obviously, when the obligations by which the district is bound are issued and value received for them. There is no indebtedness until the money is received by the district. The money is not received until the bonds are issued, approved as required by law, and delivered to the purchasers."
 The court quotes, with approval, Dillon on Municipal Corporation (5th Ed.) vol. 1, p. 403, as follows:
 "Where a vote is required the validity of the bonds issued pursuant to such vote is to be determined by the last assessment of property before the bonds are issued, not the last assessment before they are voted or directed to be issued."
 In other words, the computation should be made previous to the incurring of the indebtedness; that is to say, when the bonds are sold and delivered and the municipality paid for the same and the fact that the bonds are in excess of 5 per cent. of the valuation effective at the time of the election, if such bonds are within 5 per cent. of the valuation effective at the time of their sale for value, the bonds would be valid.
Id. (emphasis added).
¶ 6 When the bonds are delivered to the hands of a creditor, the indebtedness is incurred. The cases do not prohibit voter approval in excess of the amount which may be incurred.
 II.
¶ 7 Your second question asks whether a district may use the investment account of the general fund revenue of a public school district to pay interest on bonded indebtedness. The Oklahoma School Code at 70 O.S. 2001, §§ 15-101[70-15-101], 15-104 and 62 O.S.2001, §§ 399[62-399], 400 addresses the issue of repayment of school bonded indebtedness.
¶ 8 First, 70 O.S. 2001, § 15-101[70-15-101], regarding schools and bonded indebtedness, states in pertinent part:
 Whenever it shall become necessary for the board of education of any school district to raise sufficient funds for the purchase of a school site or sites, or to erect or purchase and equip a suitable school building or buildings, either or both, or for the purpose of making repairs to an existing school building or buildings, or for the purchase of school furniture and fixtures, or for making improvements to any school site or sites, either or both, it shall be lawful for such board of education to borrow money for which it is hereby authorized and empowered to issue bonds bearing a rate of interest not exceeding seven percent (7%) per annum, payable semiannually, at such place as may be shown on the face of such bonds, which bonds shall be payable serially as otherwise provided by law in not more than twenty five (25) years from date[.]
Id. (emphasis added).
¶ 9 Title 70 O.S. 2001, § 15-104[70-15-104] states:
 The said bonds shall contain all necessary provisions as to form; and such school district shall, before or at the time of the issuance of the same, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof.
Id. (emphasis added).
¶ 10 Public finance statutes at 62 O.S. 2001, § 399[62-399], speak to the creation of a sinking fund for public school indebtedness and how it is computed, stating in pertinent part:
 It shall be the duty of every county, city, town, township, the board of education of any city, and of every school district, issuing bonds under this article, and of the proper officers thereof, to create a sinking fund; and there shall be levied by the proper officers, annually, a sufficient tax therefor for the redemption of such bonds, which shall be collected as other taxes, and paid into the treasury as provided by law for other taxes, and shall remain as a specific fund for the redemption of said bonds[.]
Id. (emphasis added) (footnote omitted).
¶ 11 Further, Section 400, regarding the payment of bonds, states in pertinent part:
 Whenever the bonds or interest coupons issued under Sections 391 et seq. of this title, shall become due, they shall be, on presentation of coupon bonds, promptly paid by the proper disbursing officer, out of the money in his hands collected for that purpose; and he shall endorse upon the face of any bond or coupon paid by him, in red ink, the word "paid", and the date of payment, and sign his name thereto, and at each settlement he shall turn over the bonds and coupons so paid and canceled, which shall be carefully preserved or destroyed. Provided however, the presentation of a registered bond shall not be required for payment of interest thereon when payment of interest is otherwise provided by the terms of the bond.
Id. (emphasis added).
¶ 12 The above statutes state the method of creating bonded indebtedness by public school districts and the use of a sinking fund to repay the indebtedness. We must look to any restrictions on the use of general fund income of a public school to retire bonded indebtedness which otherwise is to be paid by the sinking fund pursuant to 62 O.S. 2001, §§ 399[62-399] and 400.
¶ 13 It is important to note that public schools may only become indebted consistent with the provisions of Article X, § 26
of the Oklahoma Constitution. Further, pursuant to 70 O.S. 2001,§ 1-117[70-1-117], the general fund is a current expense fund consisting of revenues that must be expended during a specified fiscal year:
 The general fund of any school district is hereby defined as a current expense fund and shall consist of all revenue or monies that can legally be expended within a certain specified fiscal year, but shall not be considered as including any money derived from a special building fund levy made in accordance with the provisions of Section 10 of Article X of the Oklahoma Constitution, nor shall it include any monies derived from the sale of bonds issued under the provisions of Section 26 of Article X of the Oklahoma Constitution. All monies derived from the proceeds of the school levies made pursuant to the provisions of Section 9 of Article X of the Oklahoma Constitution shall be placed in the general fund provided by this section. Expenditures from the general fund shall be noncapital in nature. Except as provided for in subsections J and K of this section, a district shall not be authorized to make capital expenditures as defined by this section from the general fund.
70 O.S. 2001, § 1-117[70-1-117] (A) (emphasis added).
¶ 14 Thus, it must be concluded from the above statutes that the Legislature intends that general fund revenues must be used for in a specified fiscal year on noncapital expenditures, and must not be expended on capital expenditures such as interest payments on long-term debt, which would include indebtedness controlled by 62 O.S. 2001, §§ 399[62-399] and 400.
¶ 15 Therefore, general revenue funds may not be substituted for the sinking fund statutory process defined in Okla. Const. art. X, § 26; 62 O.S. 2001, §§ 399[62-399], 400, and 70 O.S. 2001, §§15-101[70-15-101], 15-104.
¶ 16 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Case law provides that a debt is incurred as contemplatedby Article X, § 26 of the Oklahoma Constitution when bonds arevoted on, issued, approved and delivered; therefore, voters mayauthorize an amount of bonded indebtedness in excess of tenpercent (10%) of assessed valuation. Bonded indebtedness may,however, only be incurred up to the constitutional limit.
 2. Title 62 O.S. 2001, §§ 399[62-399] and 400 sets forth thespecific method by which a public school can issue bondedindebtedness and the specific method, using the sinking fund ofthe school district, to retire bonded indebtedness. Bondedindebtedness represents long-term debt. The Legislature limitsthe use of the general revenue fund to expenditures for thecurrent fiscal year. Therefore, the general fund may not be usedto pay off bonded indebtedness. See 70 O.S. 2001, §1-117(A). Neither the general revenue fund operating accountnor the general revenue fund investment account may be used as asubstitute for the statutory process to retire bondedindebtedness defined in 62 O.S. 2001, §§ 399[62-399] and 400.
W.A. DREW EDMONDSON Attorney General of Oklahoma
DOUGLAS F. PRICE Assistant Attorney General